United States District Court
Southern District of Texas
**ENTERED**
August 13, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| ROHN MICHAEL WEATHERLY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:20-CV-00054 |
| | § | |
| LORIE DAVIS, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Petitioner Rohn Michael Weatherly is an inmate in the Texas Department of Criminal Justice ("TDCJ") and, at the time of his petition, was incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, Weatherly filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 13, 2020. (D.E. 1). Liberally construed, Weatherly claims that officials violated his due process rights under the Fifth and Fourteenth Amendments during disciplinary proceedings, that insufficient evidence supported his disciplinary conviction because he was acting in self-defense, and that his double jeopardy rights were violated. Respondent filed a motion for summary judgment, to which Weatherly has not responded. (D.E. 31). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 31) be GRANTED and Weatherly's § 2254 petition be DENIED. It is further recommended that a Certificate of Appealability ("COA") be denied.

I.   **JURISDICTION**

Jurisdiction and venue are proper in this court because, at the time he filed his petition, Weatherly was incarcerated at the McConnell Unit in Beeville, Bee County, Texas, which is located in the Southern District of Texas.  28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961-62 (5th Cir. 2000).

II.  **BACKGROUND**

a.   **Disciplinary and Grievance Records**

Weatherly is serving a 15-year sentence, imposed on January 15, 2016, after being convicted of unlawful restraint of a child under 17.  (D.E. 31-1 at 2).  Weatherly does not complain about his convictions, however, but instead challenges the results of a disciplinary hearing.  (D.E. 1 at 6-7).

In May 2020, Weatherly was charged in an offense report with fighting an offender without a weapon and with no serious injuries.  (D.E. 29-1 at 4).  The charging officer indicated that Weatherly got in a fight in his cell with another inmate and punched him several times in the upper body, although no injuries resulted.  (*Id.*).

In a preliminary investigation report, Weatherly indicated that his cellmate was extorting him and that prison officials left him in the same cell despite being told about the extortion by Weatherly's family.  (*Id.* at 5).  The charging officer stated that Weatherly admitted to fighting and did not say anything about being extorted.  (*Id.*).  A pre-hearing investigation worksheet indicated that Weatherly stated: (1) he tried to resolve the incident; (2) he was acting in self defense because the other offender made contact with him first;

and (3) his family called the prison and told them of Weatherly's issues with the other inmate before the incident occurred.  (*Id.* at 10).

The hearing record indicated that Weatherly stated at the hearing that his family called the prison before the fight occurred to try to resolve the issue between Weatherly and his cellmate, and Weatherly told some prison officials himself as well, but nothing was done about it.  (*Id.* at 12).  He contended that, if he was not in prison and someone tried to break into his house, he would have the right to defend himself.  The charging officer stated that both Weatherly and the other offender admitted to fighting and striking each other with closed fists.  On cross-examination, the charging officer stated that he did not know if there were mitigating circumstances because Weatherly admitted to fighting and did not give any reason for the fight.  (*Id.*).  A TDCJ lieutenant testified that, prior to the fight, he received a call from Weatherly's aunt saying that Weatherly's life was in danger.  (*Id.* at 9).  The lieutenant talked to Weatherly about the aunt's call and asked him if he wanted to be moved to a different cell, but Weatherly responded that he did not want to move.  The lieutenant followed up with Weatherly several times in the following weeks and he always said he did not want to be moved.  (*Id.*).  As a final statement, Weatherly contended that he was entitled to act in self-defense.  (*Id.* at 12).

The hearing officer noted that a request to admit a phone call made by a family member was denied because it was irrelevant.  (*Id.* at 3).  He also noted Weatherly's argument that a family member called prison officials before the incident to inform them of the issues between Weatherly and his cellmate, but nothing was done.  The hearing officer found Weatherly guilty based on the charging officer's report and the testimony of

3

the lieutenant.  Weatherly lost 45 days of recreation privileges, 60 days of commissary privileges, and 80 days of good time.  He also received 45 days of cell rest and his line class was reduced.  (*Id.*).

In his Step 1 grievance, Weatherly argued that the hearing officer violated his rights by failing to consider the provisions in the Texas Penal Code regarding necessity and duress.  (D.E. 29-2 at 5).  He argued that the hearing officer violated his due process rights by failing to allow him to present a copy of his aunt's phone call.  (*Id.*).  Weatherly contended that he was acting in self-defense.  (*Id.* at 6).  The assistant warden responded that the proper disciplinary procedures were followed, there was sufficient evidence to support a guilty verdict, and no further action was warranted.  (*Id.*).

In his Step 2 grievance, Weatherly first argued that the TDCJ failed in its official capacity to provide him with adequate protection even though officials were warned of a dispute he was having with his cellmate.  (*Id.* at 3).  Second, he argued that the TDCJ violated his double jeopardy rights by changing his custody level a week after the rest of his disciplinary punishments.  Third, he argued that the hearing officer was biased.  (*Id.*).  Finally, he argued that he was acting in self-defense.  (*Id.* at 4).  The Central Grievance Office reviewed the case and responded that the charge was appropriate, the guilty verdict was supported by a preponderance of the evidence, all due process requirements were satisfied, and no further action was necessary.  (*Id.*).

### b.   Petition and Claims

In his petition, Weatherly first contends that his due process rights were violated during the disciplinary hearing because he was not allowed to present full transcripts of a

4

call between his aunt and prison officials where she told the officials that Weatherly's safety was in jeopardy. (D.E. 1 at 6). In his second and third claims, he asserts that TDCJ officials did nothing to protect him despite being on notice that his safety was in jeopardy, and that, as a result, he had to act in self-defense. (*Id.* at 6-7). Finally, Weatherly contends that his custody level was reduced at a later date following the hearing, which was a double jeopardy violation. (*Id.* at 7).

### III.   DISCUSSION

#### a.   Exhaustion

In the motion for summary judgment, Respondent first argues that Weatherly failed to exhaust his administrative remedies as to his first, second, and fourth claims because he did not raise them in both of his grievances. (D.E. 31 at 6-7). Respondent argues that these claims would now be untimely if raised through the grievance process, and they accordingly are procedurally defaulted. (*Id.* at 7-8).

Weatherly has not responded.

A state prisoner attacking a prison disciplinary hearing must exhaust the available administrative remedies before bringing the claims in a federal habeas petition. *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978). To exhaust administrative remedies, prisoners are required to exhaust the TDCJ grievance procedure. *Gartrell v. Gaylor*, 981 F.2d 254, 258 n.3 (5th Cir. 1993). The TDCJ has a two-step grievance process, and "a prisoner must pursue a grievance through both steps for it to be considered exhausted." *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Exceptions to the exhaustion requirement apply only where the available administrative remedies either are unavailable

or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would be futile. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). These exceptions only apply in extraordinary circumstances, and the petitioner bears the burden of demonstrating that administrative review is futile. *Id.*

Where a petitioner fails to exhaust his state remedies and any attempt to exhaust those state remedies would now be procedurally barred, those claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). A Texas prisoner cannot file an application for a writ of habeas corpus in state court concerning alleged violations of prison disciplinary procedures. *Ex parte Brager*, 704 S.W.2d 46, 46 (Tex. Crim. App. 1986) (en banc), *disavowed on other grounds by Ex parte Alexander*, 861 S.W.2d 921 (Tex. Crim. App. 1993). In order for a federal court to hear the merits of a claim despite a procedural default, the petitioner must show cause for the default and actual prejudice resulting from the default. *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000).

Here, Weatherly did not properly exhaust his first, second, and fourth claims because, although he filed both a Step 1 and Step 2 grievance, he raised each of these claims in only one of them. First, Weatherly raised his due process claim regarding the hearing officer's refusal to admit a transcript of his aunt's phone call in his Step 1 grievance, but not his Step 2 grievance. (D.E. 29-2 at 3-6). Second, he raised his claim that the TDCJ failed to provide him adequate protection in his Step 2 grievance, but not his Step 1 grievance. (*See id.*). Finally, he raised his double jeopardy claim in his Step 2 grievance, but not his Step 1 grievance. (*See id.*). In order to properly exhaust his claims, Weatherly

was required to pursue them through both steps of the grievance procedure, not in only one step. *Johnson*, 385 F.3d 515.

Further, these three claims are procedurally defaulted because Weatherly would now be unable to exhaust them through the grievance procedure.  Under TDCJ guidelines, an offender must file a Step 1 grievance within 15 days of the incident complained of,[1] and Weatherly cannot raise a claim about prison disciplinary procedures in a state habeas application.  *Brager*, 704 S.W.2d at 46.  Weatherly has not made any argument regarding cause for his default or actual prejudice resulting from the default.  *Johnson*, 215 F.3d at 494.  Accordingly, these three claims are unexhausted and procedurally defaulted.

While these three claims are unexhausted and procedurally defaulted, this memorandum will nonetheless analyze each claim on the merits as well.  28 U.S.C. § 2254(b)(2) (stating that unexhausted claims may also be denied on the merits).

   **b.    Due Process**

On the merits, Respondent argues that Weatherly's loss of privileges, 45-day cell restriction, and reduction in line class are merely changes in the conditions of confinement that do not implicate the due process clause.  (D.E. 31 at 9).  Respondent acknowledges that Weatherly's loss of good-time credits does implicate the due process clause because he is eligible for mandatory supervision and, accordingly, has a liberty interest in the loss of good-time credit.  (*Id.* at 12).  However, Respondent argues that Weatherly's due process rights were not violated when the hearing officer denied his request to present a transcript

---

[1] *See* TDCJ-CID, *Offender Orientation Handbook* (Feb. 2017), available at https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf.

or recording of his aunt's phone call because other witnesses testified regarding the phone call and confirmed what Weatherly argues—that his aunt told prison officials about a dispute between Weatherly and his cellmate.  (*Id.* at 13).  Thus, Respondent argues that the transcripts of the call were irrelevant and cumulative.  (*Id.* at 13-14).  Finally, Respondent contends that Weatherly was provided notice of the offense and given a written statement by the factfinder regarding the evidence relied on and the reason for the disciplinary action. (*Id.* at 14).

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  The Supreme Court has described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken in a disciplinary proceeding without due process and acknowledged that, under certain circumstances, a state may create liberty interests that are protected by the Due Process Clause.  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)).  However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that, while prisoners do not shed all constitutional rights at the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  *Id.* at 485 (quoting *Jones v. North Carolina*

8

*Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977), and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S at 484).

"[S]peculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995) (*citing Meachum*, 427 U.S. at 229, n.8). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, a right the Texas legislature has specifically denied creating).

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing Tex. Code Crim. P. art. 42.18 § 2(2)).[2] Prisoners earn good time credits that are added to their actual days served in prison to calculate their release date. Tex. Gov't Code

---

[2] Currently located at Tex. Gov't Code § 508.001(5).

§ 508.147.   The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time.  *Malchi*, 211 F.3d at 957-958.[3]  The mandatory supervision program in effect when Weatherly was convicted specified that a prisoner who was not on parole "shall be" released on mandatory supervision when his actual time served and accrued good time credit equaled the total term of his sentence.  *Teague*, 482 F.3d at 774-75.  In contrast to mandatory supervision, prisoners have no right or constitutional expectancy of early release on parole.  *Id.* at 776.

The Supreme Court has recognized that prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so."  *Wolff*, 418 U.S. at 561.  Prison disciplinary hearings are not part of a criminal prosecution, and accordingly, "the full panoply of rights due a defendant in such proceedings does not apply."  *Id.* at 556. However, the minimum amount of procedural due process required for prison inmates includes: (1) at least 24 hours' advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when doing so is not unduly dangerous to institutional safety or correctional goals; and (3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action.  *Id.* at 563-67.   While an absolute rule against allowing an inmate to present documentary

---

[3] The Fifth Circuit's holding applied to a previous version of the Texas mandatory supervision program, which has since been amended.  *See Malchi*, 211 F.3d at 958.  The Fifth Circuit has concluded that prisoners have a protected liberty interest under the amended version as well.  *Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007).

evidence would violate due process, that does not mean an inmate can introduce any documentary evidence he wants, regardless of if it is relevant, among other limitations. *Pace v. Oliver*, 634 F.2d 302, 305 (5th Cir. 1981).

Here, Weatherly cannot make out a due process cause of action. First, as to his reduction in line class, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and, in turn, on the amount of time he is in custody. However, Weatherly has no protectable liberty interest in a particular custodial classification. *Harper*, 174 F.3d at 719. Specifically in the case of a line class designation, the Fifth Circuit has held that the timing of an inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status. *Malchi*, 211 F.3d at 959. Thus, Weatherly cannot make out a due process claim based on his reduction in line class. Weatherly's loss of other privileges does not present an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484-87 (concluding that even placement in disciplinary segregation does not present a dramatic departure from the basic conditions of an offender's sentence).

However, because he is eligible for mandatory supervision, Weatherly does have a liberty interest in his loss of good time credits and, therefore, must be afforded the procedural due process requirements identified in *Wolff*. *Malchi*, 211 F.3d at 957-958; *Wolff*, 418 U.S. at 563-67. Weatherly does not raise a challenge to his pre-hearing written notice or post-hearing written statement by the factfinder. (*See* D.E. 1); *Wolff*, 418 U.S. at 563-67. Instead, his claim arises under the second right identified in *Wolff*, the requirement

11

that he be allowed an opportunity to call witnesses and present documentary evidence when doing so is not unduly dangerous to institutional safety or correctional goals. *See id.* Specifically, Weatherly argues that he should have been allowed to present documentary evidence in the form of a transcript of a call his aunt made to prison officials before the incident. (D.E. 1 at 6). Given the other evidence and testimony presented during the disciplinary hearing, Weatherly has not established a due process violation because the transcript would have been irrelevant and cumulative. *See Pace*, 634 F.2d at 305 (providing examples of limitations to the right recognized in *Wolff*). It was undisputed at the hearing that Weatherly's aunt called prison officials and told them about a dispute between Weatherly and his cellmate. The lieutenant testified that the call occurred and that he discussed it with Weatherly before the incident, but Weatherly did not want to be moved to a different cell. (D.E. 29-1 at 9). The transcript of the call would have merely reconfirmed undisputed testimony that was already in the record and would not have added to Weatherly's argument that he was acting in self-defense.

Accordingly, Weatherly has not established that his due process rights were violated during the disciplinary hearing because he has no liberty interest in the loss of privileges, and he was afforded due process under the *Wolff* standard during the hearing.

### c.   Sufficiency of the Evidence

Respondent next argues that there was sufficient evidence to find Weatherly guilty despite his argument that he was acting in self-defense. (D.E. 31 at 14-15). Specifically, Respondent asserts that the charging officer testified that Weatherly admitted to fighting the other offender, the lieutenant testified that Weatherly refused to be moved to a different

cell when questioned about his aunt's phone call, and Weatherly never denied fighting during the hearing.  (*Id.* at 15-16).  Respondent contends that disciplinary findings are afforded a high level of deference, and the hearing officer's findings are sufficient under the applicable "modicum of evidence" standard.  (*Id.* at 16-17).

Disciplinary findings are not disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).  In practice, this means that the court's only role on review is to determine whether the guilty finding is supported by "any evidence."   *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001).   Credibility determinations are left to the discretion of the hearing officer.  *Id.*

Here, there was sufficient evidence in the record for the hearing officer to find Weatherly guilty over his argument that he was acting in self-defense.  The record shows that the charging officer testified that Weatherly admitted to striking the other inmate with closed fists.  (D.E. 29-1 at 12).  Weatherly has not disputed the fight, but continues to argue that he was acting in self-defense.  (D.E. 1 at 6-7).  Moreover, the lieutenant testified that he received a call from Weatherly's aunt prior to the incident discussing concerns about a dispute between Weatherly and his cellmate, but Weatherly told the lieutenant that he did not want to change cells several times in the weeks after the phone call.  (D.E. 29-1 at 9). The hearing officer made a credibility determination in favor of the charging officer and lieutenant, and the court does not review credibility determinations made by the hearing officer.  *Hudson*, 242 F.3d at 537.  Their testimony is sufficient to meet the exceedingly low "any evidence" standard that applies to the review of prison disciplinary findings.  *Id.*

13

Accordingly, Weatherly has not established that there was insufficient evidence to find him guilty of the offense despite his claim that he was acting in self-defense.

### d. Double Jeopardy

Finally, Respondent argues that prison disciplinary hearings are not criminal proceedings, and therefore do not implicate double jeopardy rights. (D.E. 31 at 17). Respondent further argues that the record does not provide any support for Weatherly's claim that his line class was changed again after the hearing. (*Id.* at 17-18).

Application of the Double Jeopardy Clause is limited to proceedings that are "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528 (1975). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Prison disciplinary proceedings do not implicate the Double Jeopardy Clause. *Turner v. Johnson*, 46 F. Supp. 2d 655, 667-68 (S.D. Tex. 1999). Revocation of good time credits is not comparable to a criminal conviction. *Hudson*, 242 F.3d at 537.

Here, Weatherly has not established that his double jeopardy rights were violated. The Double Jeopardy Clause does not apply to prison disciplinary proceedings because they are not "essentially criminal." *See Breed*, 421 U.S. at 528; *Wolff*, 418 U.S. at 556; *Turner*, 46 F. Supp. 2d at 667-68. Moreover, there is no evidence in the record that Weatherly's line status was further changed after the completion of the disciplinary hearing.

14

## IV.    CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Weatherly has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Here, because reasonable jurists would not find it debatable that Weatherly failed to state a claim for a violation of a constitutional right, it is recommended that a COA be denied.

## V.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 31) be GRANTED and Weatherly's § 2254 petition be DENIED.  In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted on August 13, 2021.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).